UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Dana DeMerchant and Gary   :
DeMerchant,       :
   Plaintiffs,     :
            :
  v.          :   File No. 1:05-CV-316
            :
Springfield School District  :
and Dan Jerman,      :
   Defendants.    :

<u>OPINION AND ORDER</u>
(Paper 34)

Plaintiffs Dana and Gary DeMerchant, each proceeding *pro se*, are the parents of a child who has sought special education services under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA").  The DeMerchants claim that their child was wrongfully denied the services to which he was entitled, and that their rights as parents were violated.  With respect to the latter claim, the DeMerchants assert that they tried to raise their concerns at a due process hearing, but that hearing officer Dan Jerman barred them from presenting the issues they wanted reviewed.

Currently pending before the Court is Jerman's motion to dismiss on grounds of quasi-judicial immunity.  The DeMerchants have not filed a response to the motion.  For the reasons set forth below, Jerman's motion to dismiss (Paper 34) is GRANTED.

Factual Background[1]

For the purpose of deciding Jerman's motion to dismiss, the allegations in the plaintiffs' complaint will be accepted as true.  According to the complaint, the DeMerchants' son, K.D., has attended school in the Springfield School District since 2002.  He arrived in Springfield with an Individualized Education Plan ("IEP") that "hinted at an Autism Spectrum Disorder . . . ."  (Paper 5 at 1).  After the DeMerchants repeatedly requested testing for their son, the School District authorized an observation in February, 2004.  As a result of the observation, the DeMerchants were told that K.D.'s education plan needed to be altered.  The School District did not implement the recommended changes, and K.D.'s condition quickly declined.  As the DeMerchants explain:

> None of the school districts [sic] doctors [sic] recommendations from the observation were put into place.  One month later our son collapsed.  He was vomiting, had total loss of bowel control to the point of being put into a diaper and he refused to

---

[1]   These facts were set forth in a prior decision (Paper 30), and are largely repeated here.  The facts have been taken primarily from the allegations in the DeMerchants' complaint.  Additional facts come from the record of administrative proceedings, which the Court may consider on a motion to dismiss.  See Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004) (court may look to public records when deciding a motion to dismiss); Wang v. Pataki, 396 F. Supp. 2d 446, 453 n.1 (S.D.N.Y. 2005) (court may consider documents submitted in administrative proceedings, as well as public documents, when deciding a motion to dismiss).

> eat.  He refused to eat for about 7 weeks, he went
> from 130 lbs to 106 lbs and in the end he was
> admitted into the hospital.

Id.

During his hospitalization, K.D. was diagnosed with "an Autism Spectrum Disorder."  Id.  Upon his release, it was recommended that he receive a one-on-one aide.  This recommendation was never adopted.  Moreover, the School District "felt the need to try to prove [K.D.] truant," and K.D. was "forced back into school without any of the supports his doctors say he needs.  It was at this point that he started to collapse again and had to be medicated."  Id.

In November, 2004, the School District allegedly removed K.D.'s IEP based upon a doctor's statement that K.D.'s diagnosis had been withdrawn.  After the School District declined to pay for an independent evaluation of K.D., the DeMerchants filed an Administrative Complaint with the Vermont District of Education ("DOE").  The DOE assembled an investigative team, which found that the School District had failed to comply with the relevant state and federal regulations.  Specifically, the team concluded that the School District had been required either to provide an independent evaluation at public expense, or to initiate a due process hearing to show that its evaluation was appropriate.  As a remedy for this violation, the DOE ordered the School District

to "either ensure that it will provide for an [independent
evaluation] for KD at public expense" or initiate a due
process hearing by June 17, 2005.  (Paper 34-2 at 7).  The
School District subsequently filed a timely request for a due
process hearing.  (Paper 34-3 at 1).  As indicated in the
DOE's order, the question presented at the hearing was whether
the School District's evaluation of K.D. was appropriate.

    The DeMerchants now claim that the due process hearing
was not properly conducted.  In his role as hearing officer,
Jerman held a telephone conference on August 26, 2005.
According to the DeMerchants, Jerman limited the telephone
conference to the question of whether testing had been
performed on K.D., and did not allow them to speak.  When they
attempted to challenge the results of the testing, and to
present evidence of independent test results, Jerman allegedly
informed them that those issues would need to be raised in a
second due process hearing.  (Paper 5 at 2).

    Jerman issued a written decision on September 2, 2005,
finding that "there is no question that the District's three
year evaluation of the student in 2004 met all the
requirements of the regulations regarding planning, notice,
scope, sufficiency and documentation."  (Paper 34-3 at 3-4).
Jerman also concluded that "the parents are seeking an
evaluation that will agree with their assessment of the

student's eligibility for special education."  Id. at 3.

Accordingly, Jerman allegedly advised the DeMerchants of their

right to pay for an evaluation themselves, and of their right

to challenge K.D.'s eligibility determination in a separate

due process proceeding.  Id. at 3.

The DeMerchants allege that they were granted a second

due process hearing, but were told that they would not be

allowed to present any issues that could have been raised at

the first due process hearing.  Because the DeMerchants wish

to argue "the total case," they have declined the second due

process hearing and appealed the result of the first due

process to this Court.  (Paper 5 at 2).  For relief, the

DeMerchants seek the removal of Jerman as a hearing officer,

monitoring of Jerman's past and present cases, independent

testing for K.D. at a specific hospital in Boston, and

monetary damages.  (Paper 20).  Jerman's motion to dismiss

reports that he ceased serving as a hearing officer for the

DOE as of June, 2005.  (Paper 34-1 at 4).

## Discussion

## I.  Legal Framework

On a motion to dismiss, the Court must take the

allegations in the complaint as true, construe the complaint

in the light most favorable to the plaintiffs, and draw all

inferences in plaintiffs' favor.  See Warth v. Seldin, 422

U.S. 490, 502 (1975); Cosmas v. Hassett, 886 F.2d 8, 11 (2d
Cir. 1989).  The complaint must not be dismissed unless "'it
appears beyond doubt that the plaintiff can prove no set of
facts in support of his claim which would entitle him to
relief.'"  EEOC v. Staten Island Sav. Bank, 207 F.3d 144, 148
(2d Cir. 2000) (quoting Conley v. Gibson, 355 U.S. 41, 45-46
(1957)).  The "issue is not whether a plaintiff is likely to
prevail ultimately, but whether the claimant is entitled to
offer evidence to support the claims."  See Chance v.
Armstrong, 143 F.3d 698, 701 (2d Cir. 1998) (citations and
internal quotation marks omitted).  *Pro se* complaints are to
be construed more liberally than complaints drafted by trained
attorneys.  Haines v. Kerner, 404 U.S. 519, 520 (1972).

II.   Jerman's Motion to Dismiss

      In their claims against hearing officer Jerman, the
DeMerchants focus on Jerman's rulings and statements during
the due process hearing.  Specifically, they contend that
Jerman failed to allow them to speak and failed to consider
their evidence.  The question now before the Court is whether
Jerman, as a hearing officer in an administrative proceeding,
is entitled to immunity.

      The doctrine of judicial immunity was originally created
to shield judges from liability for acts performed in their
judicial capacities.  Mireles v. Waco, 502 U.S. 9, 11-12

6

(1991).  The rule of absolute judicial immunity is necessary

because "principled and fearless decision-making" will be

compromised if a judge "fears that unsatisfied litigants may

hound him with litigation charging malice or corruption."

Vasile v. Dean Witter Reynolds Inc., 20 F. Supp. 2d 465, 489

(E.D.N.Y. 1998) (internal quotations and citation omitted).

"The cloak of immunity is not pierced by allegations of bad

faith or malice."  Tucker v. Outwater, 118 F.3d 930, 932 (2d

Cir. 1997).  The doctrine of judicial immunity is overcome

only when (1) the action is not taken in the judge's judicial

capacity; or (2) the action, although judicial in nature, is

performed in the complete absence of any jurisdiction.

Mireles, 502 U.S. at 11-12.

The doctrine of quasi-judicial immunity extends immunity

to administrative officials performing discretionary acts of a

judicial nature.  See Cleavinger v. Saxner, 474 U.S. 193, 200

(1985); Butz v. Economou, 438 U.S. 478, 513 (1978); Oliva v.

Heller, 839 F.2d 37, 39 (2d Cir. 1988).  Indeed, many courts

have held that state hearing officers who exercise independent

quasi-judicial powers are entitled to absolute judicial

immunity.  See, e.g., O'Neal v. Mississippi Bd. of Nursing,

113 F.3d 62, 66 (5th Cir. 1997) (absolute immunity protected

members of state licensing board who conducted adjudicatory

nursing license revocation hearings); Collyer v. Darling, 98

7

F.3d 211, 222 (6th Cir. 1996) (state personnel review board

members were absolutely immune from monetary relief with

respect to their adjudicatory functions), cert. denied, 520

U.S. 1267 (1997); Gyadu v. Workers' Comp. Comm'n, 930 F. Supp.

738 (D. Conn. 1996) (state workers' compensation commissioner

entitled to absolute immunity), aff'd, 129 F.3d 113 (2d Cir.

1997), cert. denied, 525 U.S. 814 (1998).

In this case, Jerman is being sued for actions taken in

his role as a hearing officer.  His alleged wrongdoing

includes barring certain arguments and evidence, and

ultimately reaching an unjustified conclusion.  There is no

allegation that Jerman was acting outside of his role as an

adjudicator, or that he was acting without jurisdiction.

Jerman's alleged actions were undoubtedly judicial in

nature.  He presided over an administrative process, dictated

the scope of that process, acted as the trier of fact and

issued a decision based upon his legal conclusions.  As the

Supreme Court has noted, "[t]he conflicts which . . . hearing

examiners seek to resolve are every bit as fractious as those

which come to court . . . .  There can be little doubt that

the role of the modern [hearing officer] . . . is

'functionally comparable' to that of a judge."  Butz, 438 U.S.

at 513.

8

Because Jerman's role was truly quasi-judicial, and since the DeMerchants' claims against him pertain to actions taken solely in his role as a hearing officer, he is entitled to immunity.  See Indep. Sch. Dist. No. 283 v. S.D., 948 F. Supp. 860, 877 n.28 (D. Minn. 1995) (concluding that hearing officer in special education case was "wholly insulated from a claim which arises from her conduct as an adjudicator, by the principles of judicial immunity") (citations omitted). Therefore, his motion to dismiss is GRANTED.

## Conclusion

For the reasons set forth above, defendant Dan Jerman's unopposed motion to dismiss (Paper 34) is GRANTED, and the claims against him are DISMISSED.[1]

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 8th day of February, 2007.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge

---

[1]   The Court has previously dismissed the plaintiffs' claims against the Department of Education (Paper 30), as well as any claims brought on behalf of K.D. (Paper 35). Therefore, the remaining claims in this case pertain to the violations of the parents' rights under the IDEA, and the sole remaining defendant is the School District.