```
                    UNITED STATES DISTRICT COURT
                            FOR THE
                      DISTRICT OF VERMONT

Dana DeMerchant                    :
and Gary DeMerchant,               :
        Plaintiffs,                :
                                   :
    v.                             :     File No. 1:05-CV-316
                                   :
Springfield School District,       :
        Defendant.                 :
```

OPINION AND ORDER
(Paper 37)

Plaintiffs Dana and Gary DeMerchant, each proceeding *pro se*, are the parents of a child who has sought special education services under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA").[1] The DeMerchants claim that their child has been wrongfully denied the services to which he is entitled, and that their rights as parents have been violated. The instant action is an appeal from a due process Hearing Officer's decision, filed pursuant to 20 U.S.C. § 1415(e) and 34 C.F.R. § 300.512.

Currently pending before the Court is the Springfield School District's ("District") motion for summary judgment

---

[1] Since the DeMerchants filed their complaint, Congress has re-named this statute the "Individuals with Disabilities in Education Improvement Act." 20 U.S.C. § 1400 *et seq.* Because the events set forth in the complaint predated this Congressional action, the Court will continue to refer to the statute as the IDEA.

1

(Paper 37).  The District contends that the sole issue before the Hearing Officer pertained to the sufficiency of an evaluation conducted in 2004, and argues that the Hearing Officer properly found in its favor on this issue.[2]  For the reasons set forth below, the motion to summary judgment is GRANTED and this case is DISMISSED.

### Factual Background

The DeMerchants are the parents of K.D., a minor who has received special education services from the Springfield, Vermont school district.  The DeMerchants claim that K.D. came to Springfield with evaluations that "hinted at an Autism Spectrum Disorder."  (Paper 5 at 1).  In February 2004, they requested an independent educational evaluation ("IEE") of their son at public expense.  The District advised the DeMerchants that it would first conduct its own evaluation of K.D.

At a meeting in March 2004, an evaluation plan was developed by an Evaluation Planning Team ("EPT").  Gary DeMerchant was a member of the EPT and attended the meeting.

---

[2] The District supplemented its motion (Paper 51) after the Supreme Court issued its decision in <u>Winkelman ex rel. Winkelman v. Parma City School Dist.</u>, 127 S. Ct. 1994 (2007). The <u>Winkelman</u> decision held that parental rights under the IDEA are not limited to procedural rights, and include "the entitlement to free and appropriate public education for the parents' child." 127 S. Ct. at 2005. In light of the <u>Winkelman</u> holding, the Court will address both procedural and substantive issues in this Opinion and Order.

The EPT met again in December 2004, and reviewed the evaluation reports that had been produced at the District's expense. As a result of this review, the EPT concluded that K.D. was no longer eligible for special education services.

Gary DeMerchant was informed of the EPT's decision at the December 2004 meeting, and again in a letter dated January 21, 2005. (Paper 39-6 at 2). The letter stated that although K.D. no longer met the eligibility citeria for special education services, "the services that [K.D.] previously received under IDEA, will be provided under Vermont's Act 157 Educational Support System." Id. The District's letter further informed the DeMerchants that it was denying their second request for an IEE, and that it would be "requesting a hearing to show that its evaluation is appropriate. You too have the option of filing a due process hearing if you so chose [sic]." Id.

On April 11, 2005, the DeMerchants filed an administrative complaint with the Vermont Department of Education ("DOE"). The complaint raised three issues pertaining to K.D.: (1) whether the District considered the information offered by the DeMerchants at the December 2004 meeting; (2) whether the District provided proper written notice to the DeMerchants of its decision that K.D. was no longer eligible for special education services; and (3)

whether the District properly responded to the DeMerchants' request for an IEE.  The DOE Commissioner adopted the recommendation of the department's investigator finding in favor of the DeMerchants on the second and third issues.  For corrective action, the DOE required the District to "give clear instructions to its special education staff in the regulatory requirements of IEEs, evaluations requests and prior written notice . . . ."  The DOE also required the District to

> provide the Parents with information about where an IEE may be obtained and the agency criteria applicable for evaluations, and either ensure that it will provide for an IEE for KD at public expense *or initiate a due process hearing to show that its evaluation was appropriate.*  If the [District] does not either ensure that it will provide for an IEE or initiate a due process hearing by June 17, 2005, the [District] shall pay for the IEE obtained by the Parents upon their submission of an IEE report and bill.

(Paper 39-8 at 9) (emphasis added).

The District filed a timely request for due process on June 17, 2005.  On August 8, 2005, Hearing Officer Dan Jerman informed the parties that he would hold a telephone conference on August 26, 2005.  Jerman further instructed that "[o]n or before August 19, 2005 the parties shall file with me (with copies to the other party) any and all written documents they wish to have considered in this matter, along with the names of any witnesses they may wish to call at a hearing with a

4

brief summary of each witness's expected testimony."  (Paper 39-9 at 2).

Pursuant to Jerman's instructions, the District submitted a seven-page cover letter and various exhibits in support of its assertion that the publicly-funded evaluation of K.D. was proper and appropriate.  The District's exhibits included the reports considered by the EPT, a letter from the DeMerchants, and a professional comparison of the District's assessment and that provided by Dr. Root, one of the DeMerchants' experts.  The DeMerchants provided Jerman with 92 pages of materials, including all information that had been presented to the EPT in December 2004.  (Papers 39-15 through 39-19).

Although there is no transcript of the August 26, 2005 telephone conference, Jerman discusses the call in his September 2, 2005 written decision.

> At the status conference the parents admitted that their request for an independent evaluation was based on their disagreement with the conclusion of the EPT in December 2004 regarding the student's eligibility for special education.  The parents were unable to point to anything in the record to support an allegation that the evaluation itself was incomplete or insufficient, or that it did not conform to the student's evaluation plan.  In essence, it is clear that the parents are seeking an evaluation that will agree with their assessment of the student's eligibility for special education.
>
> At the status conference the hearing officer advised the parents that if they disagreed with the outcome of the student's evaluation in December 2004, they could obtain an independent evaluation at their own expense that the District would be required to

>consider.  The parents were also informed that they
>could initiate due process to challenge the EPT's
>eligibility decision and any aspect of the student's
>past and ongoing program and placement, including a
>request for further evaluation at District expense
>if it could be shown that the student's condition
>has changed since December 2004.

(Paper 34-3).  Jerman ultimately found in the District's favor.  Based upon his review of the papers submitted by the parties, Jerman concluded that "the District's three year evaluation of the student in 2004 met all the requirements of the regulations regarding planning, notice, scope, sufficiency, and documentation.  See Vermont Special Education Rule § 2362.2.4."  Id. at 4.

On December 1, 2005, the DeMerchants filed an appeal in this Court.  Their complaint challenges the due process proceeding "based on the fact that it was solely limited to a phone call, it did not address the scope of the corrective measures outlined in the administrative complaint or any of our documented protest letters . . . ."  (Paper 5 at 2).  The DeMerchants further claim that Jerman failed to allow "the evidence to be presented and argued."  Id.  In a separate filing, the DeMerchants have submitted a "Request for Relief" seeking substantive relief for their son, removal of Jerman as a hearing officer, and monitoring of Jerman's past and present cases.  (Paper 20).  The Court has previously dismissed all claims against Jerman and the Vermont Department of Education.

6

Discussion

I. Standard of Review

The District now moves for summary judgment, arguing that Jerman was correct in finding its 2004 evaluation of K.D. legal and appropriate. Under the IDEA, the plaintiff bears the burden of proof when challenging a due process decision. Schaffer ex rel. Schaffer v. Weast, 126 S. Ct. 528, 537 (2005). In reviewing an appeal of such a decision, a district court "(i) shall receive the records of the administrative proceeding; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(3)(B)(I). The parties have not requested an evidentiary hearing on the District's motion.

Pursuant to the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of

fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) (quoting Anderson, 477 U.S. at 248).

On a motion for summary judgment, all reasonable factual inferences must be drawn in favor of the non-moving party. See, e.g., Savino v. City of New York, 331 F.3d 63, 71 (2d Cir. 2003)(citing Anderson, 477 U.S. at 255).  However, to survive a motion for summary judgment, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  While the submissions of *pro se* litigants are liberally construed, see, e.g., Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994), the fact that the plaintiffs are "proceeding *pro se* does not otherwise relieve [them] from the usual requirements of summary judgment."  Fitzpatrick v. New York Cornell Hosp., 2003 WL 102853, at *5 (S.D.N.Y. Jan. 9, 2003); accord, Feurtado v. City of New York, 337 F. Supp. 2d 593, 596 (S.D.N.Y. 2004) (citing cases).[3]

---

[3] Here, the DeMerchants have not challenged the District's statement of undisputed material facts.  For the purposes of the instant motion, those facts will therefore be deemed admitted.  L.R. 7.1(c)(3).

II.  Due Process

In their IDEA appeal, the DeMerchants present both procedural and substantive issues.  On the procedural front, they claim that Jerman wrongfully limited their presentation to a phone call, did not allow them to speak, and failed to address the corrective measures required by the DOE.  With respect to the substance of the due process proceeding, the DeMerchants contend that the Jerman erroneously limited the inquiry to the question of whether testing had been completed, "a fact we never disputed."  Rather than this limited inquiry, the DeMerchants allege that Jerman should have considered "how the school districts [sic] testing did not even come close to the same results that we had from an independent tester who's [sic] testing was done at the same time as the school districts [sic] . . . ."  The DeMerchants also claim that they were barred from presenting evidence of improper influence and threats by the District.

The first issue before the Court is whether Jerman erred in limiting the parties' oral presentations to a phone call. The Second Circuit has determined that, under the IDEA, an evidentiary hearing is not required unless there are disputed issues of fact that need to be resolved. J.D. ex rel. J.D. v. Pawlet School Dist., 224 F.3d 60, 68 (2d Cir. 2000).  "Nothing in the legislative history of the IDEA suggests that Congress

intended to require an evidentiary hearing when the material facts are already established by ample affidavits and documents.  In those situations, an adversarial hearing would be duplicative and a waste of administrative resources."  Id.

Here, the question presented by the District in its request for due process was whether its evaluation was proper and appropriate.  Both parties filed evidence in support of their arguments, including 92 pages from the DeMerchants.  Having tried to identify material factual disputes, Jerman states that "[t]he parents were unable to point to anything in the record to support an allegation that the [District's] evaluation itself was incomplete or insufficient[.]"  Thus, with respect to the only substantive issue presented at due process, the factual record was appropriately deemed complete and no evidentiary hearing was required.

The DeMerchants claim that Jerman did not allow them to speak during the status conference.  Despite this allegation, it is clear from both their complaint and Jerman's decision that the DeMerchants tried to raise additional issues during the call.  As Jerman explains in his decision, he advised the DeMerchants that other issues would need to be raised in a separate due process hearing.  It is also clear that Jerman questioned the DeMerchants about any information they might have to show that the District's evaluation was "incomplete or

10

insufficient."  Given these facts, the Court finds no basis for finding that Jerman wrongfully barred the DeMerchants from presenting relevant statements in support of their case.

Finally, the DeMerchants allege that Jerman failed to address the corrective measures that arose out of their successful administrative complaint.  The Court notes that District's due process filing was itself a product of the DOE's required corrective measures.  Any other corrective measures, such as the provision of certain information to District staff, were not presented to the Hearing Officer and were thus properly excluded from consideration.[4]

III.  Hearing Officer's Decision

The substantive issue before the Court is whether Jerman's decision was proper.  The question presented to Jerman pertained to "the sufficiency of [the District's] 2004 evaluation."  (Paper 34-3 at 1).  Because this was the sole issue presented at due process, it is the only substantive issue over which the Court has subject matter jurisdiction.  See Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 789 (2d Cir. 2002).

---

[4]  Furthermore, the Vermont education regulations provide that the power to sanction a school district for failing to comply with an administrative decision of the DOE lies with the Commissioner.  See VSBER § 2365.1.5(j).

Under Vermont's special education regulations, an evaluation of a student must be "comprehensive and individual." Vermont State Board of Education Regulation ("VSBER") § 2362.2.4(a).[5] The regulations also call for evaluations to be conducted by trained professionals, and to include "those instruments designed to assess specific areas of educational need." VSBER § 2362.2.1(a). "The child shall be assessed in all areas related to the suspected disability, including, if appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status, and motor abilities." VSBER § 2362.2.1(d). Once a student is receiving services, re-evaluations must be conducted at least once every three years. Id. The 2004 evaluation at issue here was a re-evaluation for the purpose of determining K.D.'s continuing eligibility for special education services.

With respect to the scope of the evaluation, the regulations require that, prior to conducting an initial or re-evaluation, "the EPT shall complete a written evaluation plan which lists the areas to be assessed, the procedures to be used in carrying out the evaluation, and personnel by title

---

[5] The Second Circuit has noted that "Vermont's implementing regulations comport with the requirements set forth in the IDEA, and in fact substantially mirror the federal regulations." Taylor, 313 F.3d at 781.

12

responsible for performing the evaluations." VSBER § 2362.2.4(e). In this case, the plan called for evaluations in three areas of potential disability: (1) "other health impairment," such as a chronic or acute health impairment or attention deficit disorder with hyperactivity, (2) speech or language impairment, and (3) specific learning disability. (Paper 39-10 at 10). The assessments to be performed included cognitive, educational, health, psychological and speech/language assessments, as well as an observation of K.D. in his classroom environment. Id. at 10-11. To perform these assessments, the plan identified four evaluators by name, and a pediatrician to be determined at a later date. Id. at 11. The methods used were to be determined by the individual evaluators based on their respective expertise. Id. at 14.

Each of the reports submitted by the evaluators appears to have been both "comprehensive and individual." For example, the occupational therapy evaluation report was a ten-page document developed after three separate examination dates. During these examinations, seven tests were administered to evaluate K.D.'s motor proficiency, motor integration and coordination, and visual perception. The report also included clinical observations. (Paper 39-11 at 1-10). Similarly, the speech and language evaluation reported the results of testing to address "receptive and expressive

13

vocabulary, fundamental language skills, and pragmatic language." Id. at 11-18. All testing appears to have been conducted by qualified professionals.

A psychological report was provided by Dr. Tom Gamble, Ph.D., a licensed clinical psychologist. Dr. Gamble met with K.D. on September 22, 2004 and October 27, 2004. He also conducted a parent interview by phone, an interview with a classroom teacher, and several consultations with other mental health care providers. In his meetings with K.D., Dr. Gamble administered various evaluative tests, including a Rorschach test and "Projective Drawings." Dr. Gamble's 15-page report concluded that although K.D. had learning challenges and "some degree of emotional development/psychological challenge as well," his presentation was "not consistent with any psychiatric diagnosis on the affective disorders nor anxiety disorders spectrum." (Paper 39-13 at 13).

Further testing was administered by a Diagnostic Teacher employed by the District. This testing was conducted "over the course of two days in July of 2004 as well as several days during the months of September and October," and focused on K.D.'s "intellectual and academic development." (Paper 39-12 at 2, 7). The teacher developed a thorough, individualized report concluding that K.D.'s "cognitive profile does not suggest a dynamic pattern of processing strengths and

14

weaknesses that is considered consistent with that of learning disabilities." Id. at 7.

In addition to being comprehensive, these assessments complied with the EPT's evaluation plan.  Cognition, educational achievement, psychology and speech/language capacity were each specifically tested.  For the required observation, Dr. Gamble observed K.D. at school and included his observations in his report.  Although a complete physical was never performed by a pediatrician, Dr. Gamble did consider evaluations by treating physicians, and the DeMerchants have not raised the lack of a physical exam as a basis for challenging the District's evaluation.

Given the record currently before the Court, and absent any suggestion that the EPT and/or the District failed to consider its own reports in the course of K.D.'s re-evaluation, the Court agrees with the Hearing Officer's conclusion.  While the DeMerchants claim that the Hearing Officer wrongfully limited the proceeding to the question of whether testing was performed, his decision clearly shows that he assessed the sufficiency, and not just the mere fact, of the evaluations.  Because the evaluations met the requirements of the EPT and the IDEA, the Hearing Officer's decision is AFFIRMED.

<u>Conclusion</u>

For the reasons set forth above, the District's motion for summary judgment (Paper 37) is GRANTED and this case is DISMISSED.

Dated at Brattleboro, in the District of Vermont, this 4th day of September, 2007.

<u>/s/ J. Garvan Murtha</u>
J. Garvan Murtha
United States District Judge